The **WHEELABRATOR CORPORATION**, Plaintiff,

v.

**John H. CHAFEE**, Secretary of the Navy, and **Margaret S. Anderson**, Contracting Officer, U. S. Navy Purchasing Office, Defendants.

Civ. A. No. 2437–70.

United States District Court, District of Columbia.

Aug. 31, 1970.

Daniel A. Rezneck, James A. Dobkin, Washington, D. C., for plaintiff.

Thomas A. Flannery, U. S. Atty., Joseph M. Hannon, Robert M. Werdig, Jr., Asst. U. S. Attys., Washington, D. C., for defendants.

PARKER, District Judge.

## FINDINGS OF FACT

1. Plaintiff Wheelabrator Corporation is a corporation incorporated under the laws of Delaware, having its principal place of business in Mishawaka, Indiana.

2. Defendant John H. Chafee is the Secretary of the Navy of the United States. His official residence is the District of Columbia. Defendant Margaret S. Anderson is a Contracting Officer for the Navy Procurement Office in Washington, D. C.

[The Controversy Between Plaintiff and Defendants]

3. On April 22, 1970, defendants initiated a procurement pursuant to Solicitation No. N00600–70–B–0478. The product which is the subject of Solicitation No. N00600–70–B–0478 is a self-contained portable, blast-cleaning apparatus for cleaning the hull sides of ships. Plaintiff alleges that it is a new and unique device which has never before been purchased by the United States Government.

4. Plaintiff Wheelabrator Corporation has developed such a portable ship hull cleaner as the result of a long and costly research and development effort during the past twelve years. From 1958 to 1966, plaintiff engaged in basic research and development to design, develop and fabricate the various components required for the machine. During 1964 and 1965, tests were conducted at plaintiff's expense on sample steel ship hull plates submitted to it by the Navy.

5. From 1966 on, plaintiff engaged in an advanced development and production effort relating to the portable ship hull cleaner. This effort proceeded by trial-and-error for several years. Plaintiff built several different units before arriving at a satisfactory design.

6. In December 1968, and again in 1969, plaintiff's portable ship hull cleaner was demonstrated successfully to Navy personnel. Navy personnel made a number of visits to plaintiff's work site, in connection with the development of the cleaner. They drafted performance specifications based on the structure and function of plaintiff's machine for use in the procurement by the Navy of a portable ship hull cleaner. Plaintiff's personnel worked closely with Navy personnel to redraft the performance specifications to arrive at a purchase description for the portable ship hull cleaner which would enable the Navy to procure the machine.

7. During the foregoing twelve-year period, plaintiff allegedly spent in excess of $100,000 on the development of the portable ship hull cleaner. Such expense covered the starting costs required for the production of the cleaner, preliminary engineering and development work, special tooling to manufacture components for the ship hull cleaner, the time and effort required to develop the initial production models, and important design changes which will require continued development.

8. As a result of plaintiff's time, effort and expense during the past twelve years, plaintiff allegedly acquired at its own expense essential technique, a body of technology, special equipment and tooling, all of which uniquely qualifies plaintiff to manufacture the portable ship hull cleaner for the Navy and avoid the undue delay and expense which would arise from a new supplier having to acquire such technique, technology, tooling and equipment.

9. On April 22, 1970, the Department of the Navy issued a request for technical proposals under Solicitation No. N00600–70–B–0478 for the portable ship hull cleaner. The Navy stated that it was

proceeding by the method of procurement known as "Two-Step Formal Advertising," under which bidders first submit technical proposals without price quotations and then those bidders whose technical proposals are deemed acceptable are invited to submit price bids on the item. Such a method of procurement is governed by Armed Services Procurment Regulations §§ 2–501 et seq. (hereinafter ASPR). The request for technical proposals was the first step in the procurement of the portable ship hull cleaner. On June 2, 1970, plaintiff submitted three technical proposals to the Navy pursuant to the aforesaid request, one of which was deemed acceptable by the Navy.

10. By letter dated July 22, 1970, plaintiff protested to the Comptroller General of the United States, head of the General Accounting Office, against the procurement of the portable ship hull cleaner by the method of "two-step formal advertising." Plaintiff contended that use of this method of procurement for the portable ship hull cleaner is in violation of the ASPR and that negotiation of the contract in accordance with ASPR is the only lawful method of procurement for this product. Plaintiff's protest has not yet been decided and is currently pending before the Comptroller General.

11. During the pendency of plaintiff's protest before the Comptroller General and before any decision thereon, on August 3, 1970, the Department of the Navy proceeded to the second step in this method of procurement. It issued a formal invitation for bids under Solicitation No. N00600–70–B–0478 to plaintiff and to the Pangborn Division of the Carborundum Company—the only other company whose technical proposal was deemed acceptable by the Navy. The invitation prescribes completion of the contract within 480 days after award of the contract.

12. In opposition to the defendants' continued use of this method of procurement during the pendency of plaintiff's protest before the Comptroller General, plaintiff notified the Navy that it would not submit a bid. Initially, the deadline for the submission of bids and the date for opening bids was August 18, 1970.

13. On August 17, 1970, this Court issued a temporary restraining order enjoining defendants Chafee, Anderson, and their subordinates from opening bids and from awarding a contract under Solicitation No. N00600–70–B–0478, until plaintiff's motion for a preliminary injunction could be heard. The deadline for the submission of bids and the date for opening bids was extended by the Navy to August 31, 1970.

[Irreparable Injury]

14. The award of this contract to the Pangborn Division of the Carborundum Company may result in the waste of plaintiff's skill and expertise in the technology of the portable ship hull cleaner and in the loss of plaintiff's investment in the development and construction of this product and in the fabrication of special tooling for a number of its components. It may also deprive the Department of the Navy of the benefits of plaintiff's technical skill and know-how derived from its development of this product over the past twelve years.

15. If bids are opened and the contract awarded to the Pangborn Division of the Carborundum Company, the sole bidder, during the pendency of plaintiff's protest to the Comptroller General, plaintiff's right to a meaningful decision by the Comptroller General may be abridged. The Comptroller General may be reluctant to cancel a contract once it is awarded and performance has commenced under it, even if he finds an impropriety in the procurement procedure employed by the Government.

16. A preliminary injunction will preserve the status quo pending a decision on the merits of plaintiff's claim and will preserve plaintiff's right of protest to the Comptroller General.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. The record shows that there is substantial question as to the legality of defendants' action in procuring the portable ship hull cleaner pursuant to the method of "two-step formal advertising" and that there is a substantial likelihood that upon final hearing plaintiff will establish that defendants' action is erroneous and unlawful.

3. Immediate and irreparable injury will result to plaintiff if a preliminary injunction is not granted.

4. The balance of the equities and conveniences weighs in favor of plaintiff.

5. Plaintiff does not have any plain, speedy, or adequate remedy at law, and the preliminary injunction should issue.

## PRELIMINARY INJUNCTION

It appearing to the Court from the verified complaint, affidavits, accompanying exhibits and argument presented at the hearing of August 28, 1970, that a preliminary injunction, pending final hearing and determination of plaintiff's application for a permanent injunction and other relief, should issue because, unless defendant is restrained from opening bids and awarding a contract pursuant to the two-step formally advertised procurement initiated under Solicitation No. N00600–70–B–0478, plaintiff may suffer immediate and irreparable injury and loss and damage before a hearing can be had on plaintiff's motion for a permanent injunction and other relief,

Now, therefore, it is ordered, that defendant, his agents, officers, servants, employees, and attorneys, and any person in active concert or participation with him, be and they are hereby restrained until the determination of plaintiff's application for a permanent injunction and other relief, from directly or indirectly:

(a) Opening any bid, received or submitted at any time in relation or in response to Solicitation No. N00600–70–B–0478; and

(b) Awarding any contract to any bidder pursuant to said Solicitation; and

(c) Taking any other steps, directly or indirectly, to implement, effectuate or in any other way carry out the Solicitation.

It is further ordered that the 16th day of November, 1970, at 10 o'clock a. m., at the United States Courthouse in Washington, D. C., is fixed for the time and place of hearing plaintiff's application for a permanent injunction and other relief.

It is further ordered that the bond of one thousand dollars ($1,000.00) heretofore filed with this Court for the payment of such costs and damages as may be suffered by any party who is found to have been wrongfully or unlawfully restrained herein, shall be continued pending determination of plaintiff's application for a permanent injunction and other relief.

It is further ordered that a copy of this order be served by the United States Marshal on defendants forthwith.